IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DWIGHT CARL ROELL,

                 Plaintiff,

v.                                              OPINION and ORDER

FRANK BISIGNANO,[1]                           24-cv-446-jdp
Commissioner of the Social Security Administration,

                 Defendant.

---

    This case is an appeal of a decision denying Dwight Carl Roell's claim for Social Security benefits. The court remanded the decision for further proceedings pursuant to a joint motion by the parties. Roell now moves for $15,825.02 in fees under the Equal Access to Justice Act (EAJA), which requires the court to award fees and other expenses to a prevailing plaintiff "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

    The commissioner does not dispute that Roell is the prevailing party, nor does he contend that the government's position was substantially justified. Instead, the commissioner says that the requested amount is unreasonable for two reasons: (1) the number of hours is excessive; and (2) counsel's rate is excessively high. The court does not find counsel's hours excessive, but it will adopt the commissioner's proposed hourly rate, which better reflects the statutory rate as adjusted for inflation.

---

[1] The court has updated the caption pursuant to Federal Rule of Civil Procedure 25(d).

### A. Counsel's hours

Counsel's itemized billing statements show that counsel spent 63.6 hours litigating this case. Dkt. 13-2. Attorney Jennifer Gutierrez spent 49.0 hours; senior attorney Adriana de la Torre spent 12.4 hours; and paralegals spent 2.2 hours. Most of this time, 54.9 hours, was spent reviewing the medical records and preparing the 39-page opening brief. *See* Dkt. 7.

The commissioner argues that counsel spent an excessive amount of time reviewing records and preparing the opening brief. The commissioner points out that the record in this case was 1,009 pages, which is not unusually long for a social security disability case, and that the issues involved the ALJ's RFC assessment, evaluation of the medical opinions and evaluation of subjective symptoms, all of which are standard issues in social security appeals. The commissioner says that the hours spent were inflated because Attorney Gutierrez and Attorney de la Torre engaged in duplicative work. For example, Gutierrez spent 5.5 hours preparing a potential arguments memo, which de la Torre spent 2.8 hours reviewing. Gutierrez then drafted the brief, and de la Torre spent another 3.1 hours reviewing and finalizing it.

The commissioner is correct that the amount of time spent on the opening brief in this case was higher than normal. This court and others in the Seventh Circuit have recognized that 40 to 60 hours is standard for a Social Security disability appeal, *See Hughes v. Saul*, 18-cv-378-slc, 2020 WL 3316093, at *2 (W.D. Wis. June 18, 2020) (collecting cases); *E.H. by Hayes v. Berryhill*, No. 4:16-CV-39-PRC, 2018 WL 549954 (N.D. Ind. Jan. 25, 2018) (same). The number of hours spent on this case slightly exceeded that range, even though no reply brief was filed because the commissioner stipulated to a remand. But the opening brief involved four independent issues, and counsel's presentation of those issues was particularly thorough. It was not unreasonable for counsel to spend the time necessary to produce a thorough opening brief,

2

particularly because counsel's effort led the commissioner to stipulate to remand. *See Hensley v. Eckerhard*, 461 U.S. 424, 430 n.3 (1983) (time required and results obtained are relevant factors in determining fee award).

As for the commissioner's contention of duplicative work, there may be room to debate whether all the time that Gutierrez and de la Torre spent drafting and reviewing the brief was absolutely necessary. But courts review fee petitions for reasonableness, not perfection. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."). The billing records show that Gutierrez and de la Torre had different responsibilities consistent with the role of a junior and senior attorney, which does not suggest that they were performing the same work. *See Kinsey-McHenry v. Colvin*, No. 2:12-CV-332-PRC, 2014 WL 1643455, at *2 (N.D. Ind. Apr. 23, 2014) ("Review by a senior attorney ensures that the quality of the brief is high and that necessary revisions are made before the brief is filed with the Court."). The court sees no reason to reduce the fee award because two attorneys worked on this case.

## B. Counsel's rate

The EAJA limits attorney fees to no more than $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The statutory rate was set in 1996, so courts in this circuit normally apply the Consumer Price Index (CPI) to adjust for inflation. *Sprinkle v. Colvin*, 777 F.3d 421, 428 (7th Cir. 2015) ("Courts should generally award the inflation-adjusted rate according to the CPI, using the date on which the legal services were performed."). Both parties in this case agree that counsel should receive the CPI-adjusted statutory rate; their only disagreement is

3

about the appropriate CPI to use for the adjustment. Roell proposes a rate based on National CPI, which produces a rate of $253.08. The commissioner proposes a rate based on the Midwest CPI, which produces a rate of $241.06.

District courts in this circuit are split as to whether the national or regional CPI is the more appropriate measure of inflation for the purpose of EAJA fees. *See Jensen v. Berryhill*, 343 F. Supp. 3d 860, 865–66 (E.D. Wis. 2018) (collecting cases). In *Sprinkle*, the Seventh Circuit explicitly declined to decide the issue, leaving it to the "discretion of the district courts whether to adopt the national or regional index in specific cases." 777 F.3d at 428 n.2. But in other types of fee petitions, this court has routinely compared an attorney's rates with comparable lawyers in the same region, because that's the most accurate measure of fair market rate in the market where counsel practices. *E.g.*, *Schwoegler v. Reviver Fin. LLC*, No. 18-cv-287-jdp, 2019 WL 6840741 (W.D. Wis. Dec. 16, 2019) (comparing counsel's rates with other consumer lawyers in Wisconsin); *Averbeck v. Lincoln Nat'l Life Ins. Co.*, No. 20-cv-420-jdp, 2023 WL 6307414 (W.D. Wis. Sept. 28, 2023) (reducing rates for California attorneys based on prevailing market rate in Wisconsin).

Roell argues that even if the regional rate is appropriate in other types of cases, the national rate is more appropriate in social security cases. Roell cites *Jensen*, which reasoned:

> Simply adopting the rate for the region in which the court sits overlooks the fact that lawyers from all over the country handle social security cases. In this district, for instance, lawyers from New York, Pennsylvania, Texas, and Illinois regularly appear; in fact, a majority of the social security cases currently pending before me (in which the plaintiff is represented) involve lawyers from out of state. As a result, in the social security context, there <u>does</u> appear to be a national market. Even if a regional CPI would best reflect the "prevailing market rate" for certain matters, social security cases seem to be different.

343 F. Supp.at 866. But out-of-state counsel is not a phenomenon unique to social security cases, *See, e.g.*, *Averbeck*, 2023 WL 6307414, at *7–*8 (California attorneys), and this court typically awards out-of-state counsel the prevailing local rate, unless counsel can show that the services offered could not have readily been obtained from local counsel. *Id.* (citing *Mathur v. Bd. of Trustees of Southern Ill. University*, 317 F.3d 738, 743–44 (7th Cir. 2003)). Counsel has not made that showing here, so the court will follow its typical approach and use the regional CPI rate.

The commissioner also takes issue with counsel's request for a rate of $129.96 per hour for paralegal time. Both Roell and the commissioner acknowledge cases in which courts have found rates of $100 per hour appropriate. Dkt. 14, at 6 (citing *Cullen v. Colvin*, No. 4:14-cv-59, 2015 WL 8180642, at *4 (S.D. Ind. Dec. 7, 2015) and citing *Caldwell v. Berryhill*, No. 415-cv-70, 2017 WL 2181142, at *2 (S.D. Ind. May 18, 2017)). Roell's rate of $129.96 takes a $100 per hour rate in 2017 and adjusts it into 2024 dollars using the national CPI. The commissioner says that Roell has cited no authority that paralegal rates can be adjusted for inflation, but the EAJA allows for cost-of-living adjustments, and there is no reason to think that paralegals are exempted from that general rule. In any event, more recent cases in this circuit have found rates of around $125 appropriate, *Zachary A. B. v. Bisignano*, No. 4:24-CV-04100-SLD-RLH, 2026 WL 312108 (C.D. Ill. Feb. 5, 2026), and Roell's proposed rate is not substantially different than that. The court will use Roell's proposed rate for paralegal time.[2]

---

[2] Roell used the national CPI to adjust the paralegal rate, just as he did with the attorney rate. The commissioner didn't propose an alternative based on the regional CPI, and the difference between the two indices is not substantial. The court will use Roell's proposed rate for paralegal time, even though it is using the regional CPI to adjust the statutory rate for attorney time.

## C. Conclusion

The court will approve fees for 2.2 hours of paralegal time at an hourly rate of $129.96, and for 61.4 hours of attorney time at the regional CPI-adjusted hourly rate of $241.06, for a total of $15,087.00.

EAJA fees belong to the plaintiff as the prevailing party, not to his attorneys, and the EAJA award is subject to offset to satisfy any pre-existing debt that the plaintiff may owe the United States. *Astrue v. Ratliff*, 560 U.S. 586 (2010). But if there is no pre-existing debt, then the plaintiff may assign the fee award directly to his attorneys, *see Mathews-Sheets v. Astrue*, 653 F.3d 560, 565 (7th Cir. 2011), *overruled on other grounds by Sprinkle*, 777 F.3d 421, which Roell has done in this case. Dkt. 13-1. After entry of this order, if the commissioner verifies that Roell owes no pre-existing debt subject to offset, then the commissioner will direct that $15,087 be paid to Tower Law Group, pursuant to the EAJA assignments signed by Roell and his counsel.

ORDER

IT IS ORDERED that:

1.  Plaintiff Dwight Roell's motion for attorney fees, Dkt. 13, is GRANTED in part and DENIED in part as follows:

    a.  The court approves fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), in the total amount of $15,087.00.

    b.  If counsel for defendant can verify that plaintiff owes no pre-existing debt subject to offset, defendant will direct that the award be made payable to

Tower Law Group pursuant to the EAJA assignments signed by plaintiff and his attorneys.

Entered May 12, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge